LAW OFFICE OF JONATHAN R. HOWDEN
Jonathan Howden (State Bar No. 97022)
Howdenlaw@gmail.com
201 California Street, Suite 450
San Francisco, CA 94111
Telephone: (415) 591-1109

BOERSCH SHAPIRO LLP
David W. Shapiro (State Bar No. 219265)
Dshapiro@boerschshapiro.com
Martha Boersch (State Bar No. 126569)
Mboersch@boerschshapiro.com
Lara Kollios (State Bar No. 235395)
Lkollios@boerschshapiro.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorneys for Defendant
MICHAEL MARR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL MARR, et al.,<br><br>Defendants. | Case No. CR 14-00580 PJH<br><br>DEFENDANTS' MOTION TO SUPPRESS VIDEO AND AUDIO RECORDINGS MADE IN VIOLATION OF THE FOURTH AMENDMENT AND ALL EVIDENCE DERIVED THEREFROM, AND REQUEST FOR EVIDENTIARY HEARING TO DETERMINE TAINT<br><br>Date: May 25, 2016<br>Time: 2:30 p.m.<br>Crtrm: 3 (The Honorable Phyllis J. Hamilton) |

## TABLE OF CONTENTS

INTRODUCTION .......... 1

SUMMARY OF ARGUMENT .......... 3

ARGUMENT .......... 4

I. The Defendants Had a Reasonable Expectation of Privacy for Their Conversations Outside the Courthouses .......... 4

II. The Defendants Conduct Demonstrated that They Expected Their Conversations to be Private 7

III. The Government Used Surveillance Devices to Capture Conversations its Agents Could Not Overhear .......... 8

IV. The Government's Failure to Get a Title III Order Requires Suppression .......... 9

V. Any Evidence Derived From the Unlawful Recordings Must be Suppressed. .......... 11

CONCLUSION .......... 12

**Cases**

*Berger v. New York*, 388 U.S. 41 (1967) ....................5

*Dalia v. United States*, 441 U.S. 238 (1979) ....................12

*Dorris v. Absher*, 179 F.3d 420 (6th Cir. 1999) ....................8, 9, 10

*Fazaga v. FBI*, 885 F. Supp. 2d 978 (C.D. Cal. 2012) ....................7

*Federated Univ. Police Officers' Ass 'n v. Regents of the Univ. of Cal.*, 2015 U.S. Dist. LEXIS 99147 (C.D. Cal. July 29, 2015) ....................11

*Gelbard v. United States*, 408 U.S. 41 (1972) ....................5

*Gennusa v. Canova*, 748 F.3d 1103 (11th Cir. 2014) ....................10

*Katz v. United States*, 389 U.S. 347 (1967) ....................3, 5, 6, 11

*Kee v. City of Rowlett, Tex.*, 247 F.3d 206 (5th Cir. 2001) ....................7, 8, 10

*Opal v. Cencom E 911*, 1994 WL 559040 (N.D. Ill. Oct. 5, 1994) ....................8

*People v. Lesslie*, 939 P.2d 443 (Colo. App. 1996) ....................4, 11, 12

*Rakas v. Illinois*, 439 U.S. 128 (1978) ....................9

*Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920) ....................4, 14

*Stinebaugh v. County o.f Walla Walla*, 2008 WL 4809886 (E.D. Wash: Oct. 31, 2008) ....................7

*U.S. v. Giraudo, et al*, No. 14-CR-00534 CRB (N.D. Cal. March 10, 2015) ....................3, 13

*United States v. Dempsey*, 1990 WL 77978 (N.D. Ill. Mar. 13, 1990) ....................11

*United States v. Jackson*, 588 F.2d 1046 (5th Cir. 1979) ....................7

*United States v. Jones*, 542 F.2d 661 (6th Cir. 1976) ....................5

*United States v. Kahn*,
415 U.S. 143 (1974) ....................12

*United States v. Kalustian*,
529 F.2d 585 (9th Cir. 1975) ....................12, 13

*United States v. Lyons*,
706 F.2d 321 (D.C. Cir. 1983)....................6

*United States v. Mankani*,
738 F.2d 538 (2d Cir. 1984) ....................4, 10, 11, 12

*United States v. Mcintyre*,
582 F.2d 1221 (9th Cir. 1978) ....................6, 8

*United States v. Nerber*,
222 F.3d 597 (9th Cir. 2000) ....................5, 9, 11

*United States v. Renzi*,
722 F. Supp. 2d 1100 (D. Ariz. 2010) ....................10

*United States v. Smith*,
978 F.2d 171 (5th Cir. 1992) ....................7

*United States v. Taketa*,
923 F.2d 665 (9th Cir. 1991) ....................6

*United States v. Williams*,
15 F. Supp. 3d 821 (N.D. Ill. 2014)....................7, 8, 9

*Wesley v. WISN Division-Hearst Corp.*,
806 F. Supp. 812 (E.D. Wis. 1992) ....................3

*Wong Sun v. United States*,
371 U.S. 471 (1963) ....................4, 14

**Rules and Statutes**

18 U.S.C. § 2510....................5, 7

18 U.S.C. § 2510(2) ....................9

18 U.S.C. § 2511....................8

18 U.S.C. § 2515....................8

18 U.S.C. § 2516(1) ....................13

18 U.S.C. § 2518(1)(c)....................13, 14

18 U.S.C. § 2518(3)(c)....................13, 14

18 U.S.C. § 2518( 4)(a)....................14

18 U.S.C. § 2518(5) ....................12, 13

18 U.S.C. § 2518(10)(a) .......... 9

Fed. R. Crim. P. 12(b)(4) .......... 6

Title III of the Omnibus Crime Control and Safe Streets Act (1968) .......... passim

**Treatises**

Wayne R. Lafave, Search & Seizure §2.2(±) (5th ed. 2012) .......... 12, 13

**Constitutional Provisions**

U.S Const. amend. IV .......... passim

TO: UNITED STATES OF AMERICA, PLAINTIFF; AND E. KATE PATCHEN, ASSISTANT CHIEF ANTITRUST DIVISION; AND ALBERT SAMBAT, TRIAL ATTORNEY ANTITRUST DIVISION, AND TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that on May 25, 2016, at 2:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Phyllis J. Hamilton, United States Chief District Judge, all defendants, by and through their counsel of record, will move the Honorable Court for an order granting this Motion to Suppress recordings made without judicial authorization between May 4, 2010 and January 26, 2011 in Alameda County, and between August 2, 2010 and April 7, 2011 in Contra Costa County and any and all evidence derived from those recordings. This motion is based on the Fourth Amendment to the Constitution of the United States; Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.;* all relevant case law and statutory authority; the following memorandum of points and authorities; any reply memorandum; supporting evidence; and any evidence taken and oral argument made at the motion hearing.

**INTRODUCTION**

This case arises from a larger investigation conducted by the United States Department of Justice, Antitrust Division, of alleged bid rigging at real estate foreclosure auctions following the financial crisis of 2008. The investigation led to over 5 indictments, and at least 50 cases that are now pending before district judges in the Northern District of California.[1]

---

[1] *See U.S. v. Kramer*, 11-cr-00423 PJH, (N.D. Cal. July 7, 2015); *U.S. v. Margen*, 11-cr-00425 PJH, (N.D. Cal. May 6, 2015); *U.S. v. Franciose*, 11-cr-00426 PJH, (N.D. Cal. May 6, 2015); *U.S. v. Moore*, 11-cr-00431 PJH, (N.D. Cal. May 6, 2015); *U.S. v. Alvernaz*, 11-cr-00432 PJH, (N.D. Cal. February 3, 2016); *U.S. v. Wong*, 11-cr-00427 PJH, (N.D. Cal. May 6, 2015); *U.S. v. Legault*, 11-cr-00429 PJH, (N.D. Cal. May 6, 2015); *U.S. v. Wong*, 11-cr-00428 PJH, (N.D. Cal. May 6, 2015); *U.S. v. McKinzie*, 11-cr-00424 PJH (N.D. Cal. Jan. 1, 2016); *U.S. v. Larsen*, 11-cr-00723 PJH (N.D. Cal. May 6, 2015); *U.S. v. Lipton*, 11-cr-00799 CRB (N.D. Cal. Nov. 4. 2015); *U.S. v. Powers*, 11-cr-00722 PJH (N.D. Cal. May 6, 2015); *U.S. v. Salma*, 11-cr-00801 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Doherty*, 11-cr-00797 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Campion*, 11-cr-00796 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Goodman*, 11-cr-00798 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Pessah*, 11-cr-00802 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Kent*, 11-cr-00800 CRB (N.D. Cal. Nov. 4. 2015); *U.S. v. Anderson*, 11-cr-00795 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Heinser*, 11-cr-00084 PJH (N.D. Cal. May 6, 2015); *U.S. v. Leung*, 12-cr-00083 PJH (N.D. Cal. May 6, 2015); *U.S. v. Wong*, 12-cr-00082 PJH (N.D. Cal. May 7, 2015); *U.S. v. Fong*, 12-cr-00301 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Worthing*, 12-cr-00300 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Ditmer*, 12-cr-0448 PJH (N.D. Cal. May 6, 2015); *U.S. v. Slipper*, 12-cr-0447 PJH (N.D. Cal. May 6, 2015); *U.S. v. Liu*, 12-cr-00611 PJH (N.D. Cal. May 6, 2015); *U.S. v. Montalvo*, 12-cr-00785 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Chung*, 13-cr-0069 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. McDonough*, 13-cr-00144

The investigation of all of these cases apparently involved the judicially unauthorized use of stationary microphones and cameras in places outside of the courthouses where the foreclosure auctions took place. The cameras and microphones apparently recorded the activities and conversations of anyone within their vicinity, and the government originally indicated to the defense that it intended to introduce as evidence at trial a number of these judicially-unauthorized video and audio recordings. *See* Government's Discovery Letter dated April 3, 2015, attached as Exhibit A (pursuant to Fed. R. Crim. P. 12(b)(4), the government lists recordings made between March 3, 2010 and January 26, 2011 in Alameda County, and between March 30, 2010 and April 7, 2011 in Contra Costa County as evidence that it intends to use at trial). On March 15, 2016, however, the government changed course and notified the defense that it would not use any audio from stationary recordings in its case-in-chief at trial. *See* Government's Discovery Letter dated March 15, 2016, attached hereto as Exhibit B. But because those unlawfully made recordings may well have tainted evidence the government does intend to use at trial, the defendants bring this motion to suppress the recordings and any and all evidence derived from those recordings.

The legality of such recordings is an issue now pending before United States District Judge Charles R. Breyer, who has held part of an evidentiary hearing and has not yet ruled. *See U.S. v. Giraudo, et al*, 14-CR-00534 CRB. The surveillance in that case was conducted on the steps of the San Mateo County courthouse. The surveillance in this case was apparently conducted on the steps of the Alameda and Contra Costa Counties courthouse steps. *See* Exhibit B, attachment 3. In its March 15, 2016 letter, the government indicated that several of the stationary recordings captured

---

PJH (N.D. Cal. May 6, 2015); *U.S. v. Renquist*, 13-cr-00143 PJH (N.D. Cal. May 6, 2015); *U.S. v. Rezaian*, 13-cr-99246 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Williams*, 13-cr-00388 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Barta*, 13-cr-00413 PJH (N.D. Cal. May 6, 2015); *U.S. v. Vesce*, 13-cr-00415 PJH (N.D. Cal. May 6, 2015); *U.S. v. Galvez*, 13-cr-00414 PJH (N.D. Cal. May 6, 2015); *U.S. v. Kahan*, 13-cr-00412 PJH (N.D. Cal. May 6, 2015); *U.S. v. Chang*, 13-cr-00670 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Rosenbladt*, 13-cr-00587 CRB (N.D. Cal. Nov. 4. 2015); *U.S. v. Bo*, 13-cr-00730 PJH (N.D. Cal. May 6, 2015); *U.S. v. Fung*, 13-cr-00805 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Navone*, 13-cr-00804 CRB (N.D. Cal. Nov. 4, 2015); *U.S. v. Gee*, 14-cr-00003 PJH (N.D. Cal. May 6, 2015); *U.S. v. Silva*, 14-cr-00002 PJH (N.D. Cal. Dec. 22, 2015); *U.S. v. Bishop*, 14-cr-00001 PJH (N.D. Cal. May 6, 2015); *U.S. v. Gonzales*, 14-cr-00099 PJH (N.D. Cal. May 8, 2015); *U.S. v. Zepernick*, 14-cr-00512 PJH (N.D. Cal. May 6, 2015); *U.S. v. Giraudo, et al*, 14-cr-00534 CRB (N.D. Cal. March 10, 2015); *U.S. v. Florida, et al*, 14-cr-00582 PJH (N.D. Cal. March 11, 2016); and *U.S. v. Galloway, et al*, 14-cr-00607 PJH (N.D. Cal. March 21, 2016).

audio (and in some cases video) material without an agent or confidential source in possession of the device at the time of the recording. The government also advised that six recordings previously identified as consensual recordings were mislabeled and were in fact non-consensual stationary recordings. *Id.* Because the surveillance in this case was, like the surveillance in *Giraudo,* conducted without judicial authorization, the defendants here move to suppress the audio and video recordings and any and all evidence derived from those recordings.

**SUMMARY OF ARGUMENT[2]**

In *Katz v. United States,* 389 U.S. 347, 351-52 (1967) the Supreme Court affirmed the right of individuals to be free from warrantless government eavesdropping in places accessible to the public. Speaking in a public place does *not* mean that the individual has no reasonable expectation of privacy. *Id.* (public telephone booth); *Wesley v. WISN Division-Hearst Corp.,* 806 F. Supp. 812, 814 (E.D. Wis. 1992) ("[W]e do not have to assume that as soon as we leave our homes we enter an Orwellian world of ubiquitous hidden microphones."). A private communication in a public place qualifies as a protected "oral communication" under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* ("Title III"), and therefore may not be intercepted without judicial authorization. Even in a public place, if the government uses an electronic device to capture private communications, courts find Fourth Amendment and Title III violations. *See United States v. Mankani*, 738 F.2d 538, 543 (2d Cir. 1984); *People v. Lesslie*, 939 P.2d 443, 448 (Colo. App. 1996) (agents may not, without a warrant, use listening devices to capture conversations that they could not have heard were they actually present).

Nevertheless, in this case, as in the San Mateo County case, FBI agents apparently planted electronic recording devices outside the courthouses in Alameda and Contra Costa Counties – where judges, lawyers, and other citizens regularly engage in confidential and sometimes privileged communications – for the purpose of capturing private conversations that the Government hoped would prove the existence of a conspiracy. The Government apparently did not seek any judicial

[2] The legal arguments in this motion are taken largely – and mostly verbatim – from the arguments made by defense counsel in *U.S. v. Giraudo* before Judge Breyer, since the legal issue is identical and the factual circumstances comparable.

authorization, neither a warrant nor a Title III order. It then made approximately 364 recordings of the activities and/or conversations of the defendants.

The Government's unauthorized use of recording devices to capture private conversations at the Alameda and Contra Costa County courthouses violated Defendants' Fourth Amendment rights to be secure against unreasonable searches and seizures. *See* U.S. Const. amend. IV. Further, this electronic eavesdropping operation violated Title III, which prohibits the interception of oral communications without judicial authorization. Defendants expect that the factual record that will be developed at an evidentiary hearing will support suppression, and therefore respectfully move the Court for an evidentiary hearing and to suppress all non-consensual recordings made during the course of the government's investigation and *all evidence derived therefrom*. *See Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920); 18 U.S.C. § 2515 (Title III's exclusionary rule).

## ARGUMENT

### I. The Defendants Had a Reasonable Expectation of Privacy for Their Conversations Outside the Courthouses

"To invoke the protections of the Fourth Amendment, a person must show he had a 'legitimate expectation of privacy.'" *United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000). An expectation of privacy is "legitimate" if the person had a subjective expectation that his communications would be private, and that expectation is one that society is prepared to recognize as reasonable. *Id.* The potential for electronic eavesdropping to invade privacy interests is clear. "Few threats to liberty exist which are greater than that posed by the use of eavesdropping devices." *Berger v. New York*, 388 U.S. 41, 63 (1967); *see also Katz*, 389 U.S. at 351.

Indeed, it was in response to *Berger* and *Katz* that Congress enacted Title III as a "comprehensive scheme for the regulation of wiretapping and electronic surveillance." *Gelbard v. United States*, 408 U.S. 41, 46 (1972). Title III prohibits the unauthorized recording of oral communications, and imposes criminal penalties for intentional violations of the statute. 18 U.S.C. § 2511; *United States v. Jones*, 542 F.2d 661, 668 (6th Cir. 1976) ("[T]he purpose of [Title III] was to establish an across-the-board prohibition on all unauthorized electronic surveillance[.]"). Title III

also comes with its own exclusionary rule, which provides that when the government intercepts a communication other than as Title III expressly authorizes, "no ... such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court ... of the United States." 18 U.S.C. § 2515. "Any aggrieved person" may move to suppress a communication intercepted as a result of a Title III violation. *Id.* § 2518(10)(a). Under Title III, a protected "'oral communication" is "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation[.]" 18 U.S.C. § 2510(2). Congress intended the definition of "oral communication" to parallel the reasonable expectation of privacy test used in the Fourth Amendment context. *United States v. Mcintyre*, 582 F.2d 1221, 1223 (9th Cir. 1978). Thus, the Fourth Amendment and Title III analyses are similar.

*Katz* affirmed the right of individuals to be free from warrantless government eavesdropping in places accessible to the public. The government captured Katz's end of a telephone conversation by placing an electronic recording device on the outside of the public telephone booth from which Katz placed a call. *Katz,* 389 U.S. at 348. The Court held that the government's use of the device constituted a search: "[W]hat [a person] seeks to preserve as private, *even in an area accessible to the public,* may be constitutionally protected." *Id.* at 351 (emphasis added). By occupying the booth and shutting the door behind him, Katz was "entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world." *Id.* at 352.

Following *Katz,* the courts have repeatedly held that one may have a reasonable expectation of privacy in communications undertaken in a public place. *See, e.g., United States v. Taketa,* 923 F.2d 665, 673 (9th Cir. 1991) ("Privacy does not require solitude."); *United States v. Lyons,* 706 F.2d 321, 326 (D.C. Cir. 1983) ("[B]y exposing oneself to public view, for instance, one does not relinquish one's right not to be overheard."); *United States v. Jackson,* 588 F.2d 1046, 1052 (5th Cir. 1979) ("No matter where an individual is, whether in his home, a motel room, or a public park, he is entitled to a 'reasonable' expectation of privacy."); *Fazaga v. FBI,* 885 F. Supp. 2d 978, 985 (C.D. Cal. 2012) ("[E]ven open areas may be private places so long as they are not so open to [others] or

the public that no expectation of privacy is reasonable.") (citations and internal quotation marks omitted).

Whether an individual has a reasonable expectation of privacy in oral communications is a highly fact-specific inquiry. *United States v. Smith*, 978 F.2d 171, 180 (5th Cir. 1992); *United States v. Williams*, 15 F. Supp. 3d 821, 828 (N.D. Ill. 2014). Courts generally look to the following factors, *inter alia:* "( 1) the volume of the communication or conversation; (2) the proximity or potential of other individuals to overhear the conversation; (3) the potential for communications to be reported; ( 4) the affirmative actions taken by the speakers to shield their privacy; (5) the need for technological enhancements to hear the communications; and (6) the place or location of the oral communication as it relates to the subjective expectations of the individuals who are communicating." *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 213-15 (5th Cir. 2001) & nn. 12-17 (finding that plaintiffs failed to provide sufficient facts to defeat a motion for summary judgment on § 1983 claim, and collecting cases); *see also Stinebaugh v. County o.f Walla Walla*, No. CV-07-5019, 2008 WL 4809886, at *8-9 (E.D. Wash: Oct. 31, 2008) (applying the factors set forth in *Kee* and denying summary judgment for defendants on plaintiffs' § 1983 claim based on recording of activities in an employee break room).

Applying these factors, courts have consistently found that warrantless electronic surveillance of public oral communications violates the Fourth Amendment and Title III. The Sixth Circuit held that four employees of a rabies control center, which consisted of one large room, had a reasonable expectation of privacy in conversations about their boss because they spoke only when no one else was present and stopped speaking whenever a car pulled into the driveway or the telephone was being used. *Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999). The Ninth Circuit held that a police officer had a reasonable expectation of privacy in statements made in his office, even though his office doors were open and a records clerk sat fifteen feet away. *Mcintyre*, 582 F.2d at 1224; *see also Opal v. Cencom E 911*, No. 93 C 20124, 1994 WL 559040, at *4 (N.D. Ill. Oct. 5, 1994) (finding that plaintiffs plausibly alleged a reasonable expectation of privacy in a 911 dispatch room because plaintiffs suspended conversation when speaking on the phone or using the radio and when anyone walked into the room, and the supervisor told plaintiffs they could speak privately). The Northern District of Illinois held that two arrestees had a reasonable expectation of privacy in their

conversation in the back of a police squad car because they spoke quietly and ceased talking when the squad car doors were open or when an officer was present, and the prisoner compartment was separate from the front cab and had no visible recording devices. *Williams*, 15 F. Supp. 3d at 827-29. At a minimum, these cases establish that the Government could not presume that, just because the county foreclosure auctions were held outside in a public space, it could disregard the Fourth Amendment and Title III and "authorize" *itself* to indiscriminately eavesdrop on private communications.

## II. The Defendants Conduct Demonstrated that They Expected Their Conversations to be Private

Courts frequently look to the nature of the conduct or communication in evaluating a person's subjective expectation of privacy. *See, e.g., Dorris*, 179 F.3d at 425 ("[T]he frank nature of the employees' conversations makes it obvious that they had a subjective expectation of privacy. After all, no reasonable employee would harshly criticize the boss if the employee thought the boss was listening."). Courts also recognize that one may have a subjective expectation of privacy because of the supposed unlawful nature of the activity. *Nerber*, 222 F.3d at 603 (holding that defendants had a subjective expectation of privacy in a motel room because they "ingested cocaine and brandished weapons in a way they clearly would not have done had they thought outsiders might see them"). Here, whether or not the targeted communications prove conspiracy, they were secretive and intended to be kept confidential, as the government's own evidence shows. Thus the Government had no right to presume that it could electronically eavesdrop on those communications.

It is significant that this particular public place was immediately outside a courthouse. Defendants' expectation that discreet conversations outside a courthouse would remain private is surely one that society is prepared to recognize as reasonable. Private affairs are routinely discussed as citizens, their lawyers, and even judges walk to and from court, and lawyers often take clients aside outside the courthouse for privileged conversations. "Common experience" and "everyday expectations" teach that individuals frequently have private conversations near the courthouse despite the public's access to this location, and expect that such conversations are not subject to the type of dragnet electronic eavesdropping that took place in this case. *See Williams*, 15 F. Supp. 3d at 828;

*see also Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978) (looking to "understandings that are recognized and permitted by society"). The likelihood that privileged conversations will take place near the courthouse makes this expectation of privacy all the more reasonable. *See, e.g., Gennusa v. Canova*, 748 F.3d 1103, 1110-13 (11th Cir. 2014) (recording of attorney-client communications in interview room of sheriff's office violated the Fourth Amendment); *United States v. Renzi*, 722 F. Supp. 2d 1100, 1118 (D. Ariz. 2010) (intentional interception of attorney-client communications violated the Fourth Amendment and Title III, and warranted suppression of all wiretap evidence). Indeed, as the Fifth Circuit recognized, it is eminently reasonable to expect that a "hushed conversation on the courthouse steps" will remain private. *Kee*, 247 F.3d at 215 n.18. What the Government did here is not unlawful only because it occurred outside a courthouse, but that fact makes it all the worse.

**III. The Government Used Surveillance Devices to Capture Conversations its Agents Could Not Overhear**

One of the most critical considerations in evaluating expectations of privacy in intercepted oral communications is whether the government captured by electronic surveillance what it could not have heard were its agents actually present. "[T]he Fourth Amendment protects conversations that cannot be heard except by means of artificial enhancement." *Mankani*, 738 F.2d at 543; *see also* Wayne R. Lafave, Search & Seizure §2.2(±) (5th ed. 2012) ("[R]esort to [electronic] equipment to hear that which cannot be heard except by artificial means constitutes a search within the meaning of the Fourth Amendment."). Even in public places, individuals can guard against the risk of being overheard by others by taking precautions such as speaking quietly and moving away from others. *See Dorris*, 179 F.3d at 425. "But as soon as electronic surveillance comes into play, the risk [of being overheard] changes crucially. There is no security from that kind of eavesdropping, no way of mitigating the risk, and so not even a residuum of true privacy." *Mankani*, 738 F.2d at 543 (citation omitted).

The policy underlying *Katz* and Title III is that hidden audio and video surveillance is extraordinarily invasive, *see Nerber*, 222 F.3d at 603, 605, and therefore, when it appears that the government has used electronic means to capture what a bystander could not hear, Fourth

Amendment and Title III violations should be found. *See United States v. Dempsey,* No. 89 CR 0666, 1990 WL 77978, at *4 (N.D. Ill. Mar. 13, 1990) ("[I]f the recording device used by the agent amplified the volume of sound such that some or all of the defendants' statements which it captured could not have been *audible* to the agent wearing the device, then unlawful 'enhancement,' violative of the fourth amendment and [Title III], has occurred."); *Lesslie,* 939 P.2d at 447-48 ("[C]landestine police surveillance by use of an electronic device is substantively different from simply overhearing a conversation without contrivance or augmentation of sound. ... [A listening device] may not be used without a warrant when, as here, its value is in hearing what the observed party would not allow a visible observer to overhear."); *Federated Univ. Police Officers' Ass 'n v. Regents of the Univ. of Cal.,* No. SACV 15-00137-JLS (RNBx), 2015 U.S. Dist. LEXIS 99147, at *5 (C.D. Cal. July 29, 2015) (finding that officers plausibly alleged a reasonable expectation of privacy in the offices, hallways, and bathrooms of the UC Irvine Police Department because their statements "could not have been heard by other individuals without the hidden recording devices").

If, as seems likely, the Government used electronic equipment to capture private conversations that bystanders would not have been able to overhear, that violates the Fourth Amendment and Title III. *See Mankani,* 738 F.2d at 543; *Lesslie,* 939 P.2d at 448; Lafave§ 2.2(f).

**IV.     The Government's Failure to Get a Title III Order Requires Suppression**

A core purpose of Title III is to ensure that interception of wire or oral communications "occurs only when there is a genuine need for it and only to the extent that it is needed." *Dalia v. United States,* 441 U.S. 238, 250 (1979). The Title III scheme thus includes various procedural and substantive restrictions, such as high-level Justice Department approval, 18 U.S.C. § 2516(1), and a written application to a judge for an order authorizing the interception that must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous," *id.§§* 2518(l)(c), 2518(3)(c). Title III reflects Congressional policy that electronic surveillance cannot be justified "in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn,* 415 U.S. 143, 153 n.12 (1974); *see also United States v. Kalustian,* 529 F.2d 585, 590 (9th Cir. 1975) (reversing denial of motion to suppress where Title III application failed to

adequately show why traditional investigative techniques were not sufficient). And even when it is appropriate, electronic surveillance must be conducted pursuant to judicially approved procedures, including minimization efforts. 18 U.S.C. § 2518(5). Here, it appears that the Government could not have obtained Title III authorization to do what it did, in the manner that it did it. In the first place, the Government has affirmatively stated that traditional investigative techniques *had exposed the alleged crime.* Its October 5 Status Report in the San Mateo case, the government states:

> In 2009, FBI agents were assigned to an investigation into allegations of bid rigging and fraud at public real estate foreclosure auctions in the San Francisco Bay Area, including San Mateo County. Between September and December 2009, FBI agents interviewed multiple cooperators, reviewed documentary evidence, conducted surveillance of the San Mateo County auctions, and recorded multiple bid-rigging agreement payoffs at the San Mateo County auctions using a cooperator and an undercover FBI agent. In December 2009, FBI agents were granted authority [by the *DOI* only] to place stationary audio and video recording devices in front of the San Mateo County Courthouse in order to capture conversations during and around the time of public foreclosure auctions. ***Stationary audio and video recording devices were placed in locations that were chosen after the agents had developed evidence that bidders at the auctions were reaching collusive bidrigging agreements at those locations, during and around the time of, the foreclosure auctions.

*United States v. Giraudo,* 14-CR-00534 CRB, Dkt. 49 at 3.

Given these facts, it is not clear what the Government could have said to establish that "other investigative procedures have been tried and failed." 18 U.S.C. §§ 2518(1)(c), 2518(3)(c). The desire to obtain more evidence is not enough to justify electronic surveillance. *See Kalustian*, 529 F.2d at 589 (rejecting the argument that "all gambling conspiracies are tough to crack, so the Government need show only the probability that illegal gambling is afoot to justify electronic surveillance"). The Government also appears to have disregarded altogether the Title III requirement that electronic surveillance be "conducted in such a way as to minimize the interception of communications" unrelated to the crime under investigation. 18 U.S.C. § 2518(5). To the contrary, the Government appears to have tried to capture nearly everything that happened at the courthouse on at least 130 occasions. It did not specify in advance the "identity of the person[ s] ... whose communications are to be intercepted," *id.* § 2518( 4)(a), instead intercepting communications by everyone who was outside the courthouse, including passersby discussing ordinary matters. And of

course the surveillance extended for 7 to 8 months, far longer than the 30 days after which a Title III authorization would have to have been renewed. *Id.§* 2518(5).

The methodology and results of the Government's lengthy and invasive electronic surveillance campaign suggest that the Government chose not to seek judicial authorization precisely because it knew it could not satisfy the requirements of Title III. Faced with little chance of obtaining a Title III order, the Government simply chose to ignore the legal prerequisites to intercepting oral communications and to employ electronic listening devices without any oversight.

**V. Any Evidence Derived From the Unlawful Recordings Must be Suppressed.**

The government apparently concedes that the recordings were unlawful, as it has now informed the defense that it does not intend to use specific unlawful recordings in its case-in-chief. However, the government must also prove, at an evidentiary hearing, that the evidence it does intend to introduce was not tainted by the unlawful recordings, or, in other words, is sufficiently attenuated from the original unlawful recordings. *See Wong Sun*, 371 U.S. at 484-85; *Silverthorne Lumber Co.*, 251 U.S. at 392.

According to the government, the unlawful recordings were made from March until September of 2010 in Alameda County, and from June to December of 2010 in Contra Costa County. *See* Exhibit B, Attachment 3. Discovery produced by the government indicates that many interviews and documents were obtained after the unlawful recordings were made, suggesting that the government learned of the individuals who were interviewed as a result of the unlawful recordings. Furthermore, discovery produced by the government (*see, e.g.*, NDRE-FBI-SEARCH-000104 – 000112) suggests that the government learned of individuals who would come to assist the FBI as confidential human sources from the unlawful recordings covered under this period.

//

//

//

//

//

//

**CONCLUSION**

For the forgoing reasons and based on the record herein, the Court should grant the Motion to Suppress.

Dated: March 23, 2016

BOERSCH SHAPIRO LLP

_/s/Martha Boersch_______________
Martha Boersch

Attorney for Michael Marr

Dated: March 23, 2016

LAW OFFICE OF JONATHAN R. HOWDEN

_/s/Jonathan R. Howden_______________
Jonathan R. Howden

Attorney for Michael Marr